UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIPER, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>MARK PAVLYUKOVSKYY, et al.,<br><br>    Defendants. | Case No. 20-cv-03663-WHO<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 36 |

    This case involves a dispute between two companies in the children's education space: plaintiff Piper, Inc. ("Piper"), which was co-founded in 2014 by defendant Mark Pavlyukovskyy, and My Creativity Box, Inc. ("My Creativity Box"), also founded by Pavlyukovskyy after his 2018 separation from Piper. Before me is Pavlyukovskyy's motion to dismiss Piper's Second Amended Complaint pursuant to Federal Rule of Procedure 12(b)(5) for insufficient service of process. This motion is suitable for decision without oral argument and I VACATE the hearing scheduled for December 2, 2020. *See* Civ. L. R. 7-1(b). The motion is DENIED because substitute service on Pavlyukovskyy was proper.

## BACKGROUND

    Piper was founded in 2014 by Pavlyukovskyy along with several others. Second Amended Complaint ("SAC") [Dkt. No. 23] ¶ 16. Pavlyukovskyy served as Piper's Chief Executive Officer and was a member of its board of directors. *Id.* Piper alleges that Pavlyukovskyy's employment was terminated as of September 4, 2018 as a result of "serious and repeated misuse of Piper funds for his personal account and other breaches of his fiduciary duties to Piper." *Id.* Piper negotiated a Separation Agreement with Pavlyukovskyy, which he executed on or about October 9, 2018. *Id.* ¶ 17. Among the terms of the Separation Agreement, Pavlyukovskyy agreed that he would not

refer to or represent himself as an agent or representative of Piper or that he remained in any way associated with or authorized to speak or act on behalf of Piper." *Id.* ¶ 18.

Sometime in 2018, Pavlyukovskyy founded My Creativity Box, d/b/a "Mochi", which sells products and otherwise conducts business in California. *Id.* ¶¶ 4, 6. Defendant Mihran Vardanyan, who was also formerly employed by Piper and executed a Separation Agreement on May 24, 2018, worked with Pavlyukovskyy at My Creativity Box. *Id.* ¶¶ 5, 19.

After October 9, 2018 and continuing to the present. Piper alleges that Pavlyukovskyy has engaged in misconduct that constitutes, among other related claims, breach of contract, trademark infringement, and misappropriation of trade secrets. It filed this suit on June 2, 2020, and a First Amended Complaint on August 3, 2020. Complaint [Dkt. No. 1]; First Amended Complaint [Dkt. No. 13]. On August 24, 2020, Piper filed a certificate of service that Pavlyukovskyy was served through substitute service at his "usual place of business" on August 19, 2020. Declaration of Service of Summons, Complaint and Other Initiating Documents on Defendants [Dkt. No. 18].

On October 6, 2020, counsel for Piper, Pavlyukovskyy, and My Creativity Box stipulated to allow a SAC, which added Vardanyan as a defendant. Stipulation Extending Time for Response to Second Amended Complaint [Dkt. No. 30]. Pavlyukovskyy then moved to dismiss the SAC for insufficient service of process. Defendant Mark Pavlyukovskyy's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(5) ("MTD") [Dkt. No. 36]. On October 20, 2020, My Creativity Box was voluntarily dismissed from this suit. Notice of Voluntary Dismissal [Dkt. No. 39].

**LEGAL STANDARD**

Rule 12(b)(5) of the Federal Rules of Civil Procedure allows the defendant to move to dismiss for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid." *Brockmeyer v. May,* 383 F.3d 798, 801 (9th Cir. 2004). The plaintiff "normally meets this burden by producing the process server's return of service[, which] is generally accepted as prima facie evidence that service was effected, and of the manner in which it was effected." *Emine Tech. Co., Ltd. v. Aten Int'l Co., Ltd.,* No. 08-cv-3122-PJH, 2008 WL 5000526, at *2 (N.D. Cal. Nov. 21, 2008). Unless

there is a defect in the proofs of service, "a motion to dismiss under Rule 12(b)(5) requires defendant to produce affidavits, discovery materials, or other admissible evidence establishing the lack of proper service." *Id.* "In response, the plaintiff must provide evidence showing that the service was proper, or creating an issue of fact requiring an evidentiary hearing to resolve." *Id.* "If a Rule 12(b)(5) motion is granted, the court may either dismiss the action or retain the action and simply quash the service." *Id.*

## DISCUSSION

### I. WHETHER RULE 4(E) OR RULE 4(F) APPLIES

As an initial matter, Pavlyukovskyy disagrees with Piper that Rule 4(e), governing "Serving an Individual Within a Judicial District of the United States", is applicable to the service of process in this case. He contends that he resides in New Zealand, having moved there in March 2020 with no intention to return to the United States in the foreseeable future. Given that he was in New Zealand when the suit was filed in June 2020 and when service was attempted between June and August 2020, he asserts that service should be analyzed under Rule 4(f), governing "Serving an Individual in a Foreign Country". MTD 7; Declaration of Mark Pavlyukovskyy in Support of Motion to Dismiss [Dkt. No. 36-4] ¶¶ 2–3.

Pavlyukovskyy's argument is unconvincing. The Hon. Claudia Wilken's decision in *Schumacher v. Airbnb, Inc.*, No. C 15-5734 CW, 2016 WL 7826667 (N.D. Cal. Nov. 9, 2016) is instructive here. In that case, defendant asserted that he was vacationing in France at the time of the attempted service, and from there took up residence in Canada. *Id.* at *3. He similarly argued that plaintiffs' attempt to serve him pursuant to Rule 4(e) was insufficient because plaintiff "was instead required to serve him in France or Canada pursuant to Rule 4(f), governing service in foreign countries." *Id.*

Judge Wilken rejected that argument, finding defendant "cite[d] no law for this proposition" and that "his interpretation is incorrect." 2016 WL 7826667, at *3. Rule 4(e) provides: "Unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by" following state law or a number of other means. Fed. R. Civ. P. 4(e). Judge Wilken noted that "[a]ccording to the plain language of Rule 4(e), its availability

3

depends on the location in which service is carried out, not on the location of the individual served." *Id.* Furthermore, she noted that "the Ninth Circuit has rejected the argument that an individual's location outside the United States mandates service under Rule 4(f) rather than Rule 4(e)." *Id.* (citing *United States v. Wen-Bing Soong*, 650 F. App'x 425, 427–28 (9th Cir. 2016) (upholding substitute service of summons under Rule 4(e)(1) and Cal. Code Civ. Proc. § 415.20(b) on defendants who had not been physically present in the United States for seven years and argued they had to be served under Rule 4(f))).

Accordingly, I find that "Rule 4(e) provided proper avenues for serving [Pavlyukovskyy] regardless of whether he was present in the United States at the time of attempted service." *Schumacher*, 2016 WL 7826667, at *3.[1]

## II. SUBSTITUTE SERVICE

Under Rule 4(e)(1), an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Piper elected to follow California's substitute service law. That law permits substitute service on a defendant if the plaintiff, acting with reasonable diligence, cannot serve process by ordinary methods. *See* Cal. Civ. Proc. Code § 415.20(b). The statute provides:

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address . . . in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by

---

[1] Pavlyukovskyy acknowledges that certain authorities cited by Piper allow service under Rule 4(e) on foreign residents, but argues that those cases did not squarely address whether Rule 4(f) should have been applied instead of Rule 4(e). *See, e.g.*, *Wright v. Ferry*, No. 17-cv-1996-BAS-NLS, 2018 WL 1898913 (S.D. Cal. Apr. 20, 2018); *Commercial Judgment Recovery Fund 1 LLC v. A2Z Plating Co.*, No. SACV 11–0572 DOC (RNBx) 2011 WL 2941029 (C.D. Cal. Jul. 15, 2011). But Pavlyukovskyy still fails to cite any law in support of his proposition that Rule 4(f) applies to the circumstances here. Instead, the case law discussed above shows that similar propositions to apply Rule 4(f) have been rejected by both courts in this District and the Ninth Circuit.

4

> first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

*Id.*

California's substitute service statute is "liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant." *Ellard v. Conway*, 94 Cal. App. 4th 540, 544 (2001) (citation omitted). With the law's requirements and underlying construction in mind, I address whether Piper has satisfied the requirements of this statute.

### A. Reasonable Diligence

A plaintiff must demonstrate "reasonable diligence" in attempting personal service before substitute service is permitted. Cal. Code Civ. P. § 415.20(b). Each case in which a court considers whether a plaintiff demonstrated reasonable diligence "must be judged upon its own facts" and "[n]o single formula nor mode of search can be said to constitute due diligence in every case." *Evartt v. Superior Court*, 89 Cal. App. 3d 795, 801 (1979). The plaintiff's efforts should be reasonably calculated to provide the defendant with actual notice of the action. *See Espindola v. Nunez*, 199 Cal. App. 3d 1389, 1392 (1988).

"Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as 'reasonable diligence.'" *Schumacher*, 2016 WL 7826667, at *4 (citing cases). "However, such attempts at personal service may not be required when the plaintiff is unable to locate any address at which to attempt to serve the defendant personally." *Schumacher*, 2016 WL 7826667, at *3.

Piper first attempted to serve Pavlyukovskyy in person at his last known residence address in San Francisco on June 3, 2020. Declaration of Sean P. Debruine In Support of Piper, Inc.'s Opposition to Defendant Pavlyukovskyy's Motion to Dismiss ("Debruine Decl.") [Dkt. No. 44] ¶ 6 & Ex. 5 (copy declaration of diligence from process server). After the second attempt on June 4, 2020, Piper learned that Pavlyukovskyy no longer lived at the San Francisco residence. *Id.* The process server "performed a 'skip trace' search of public records in an effort to locate [] Pavlyukovskyy," and that search indicated that Pavlyukovskyy was using what Piper knew to be his mother's home in Ohio as his residence address. *Id.* ¶ 7. A process server in Ohio attempted

5

1    to serve Pavlyukovskyy at that address on June 12, 2020 but was informed that Pavlyukovskyy

2    did not reside there either. *Id.* ¶ 8.

3          On June 17, 2020, Piper mailed a Notice of Lawsuit and Request to Waive Service of

4    Summons and Complaint to Pavlyukovskyy at his place of business, My Creativity Box, Inc., 953

5    De Haro Street, San Francisco, CA 94107. Debruine Decl. ¶ 9 & Ex. 7. Piper also mailed a copy

6    of that letter and Request to Waive Service to the attorney who represented Pavlyukovskyy with

7    regard to the Separation Agreement at issue in this matter, David A. Lowe, Esq. at Rudy, Exelrod,

8    Zieff & Lowe, LLP, 351 California Street, Suite 700, San Francisco, CA 94104. *Id.* ¶ 9. Piper

9    received no response from either Pavlyukovskyy or his attorney to that request to waive service

10   and neither package was returned as undeliverable. *Id.* Shortly after delivery of the foregoing

11   letters, Piper's counsel received notice that Pavlyukovskyy had viewed his profile on

12   LinkenIn.com. *Id.* ¶ 10.

13         Soon thereafter, Piper attests that it learned that Pavlyukovskyy was apparently in New

14   Zealand. It retained a firm registered with the New Zealand government to perform investigations

15   and serve process. *Id.* ¶ 11. The firm contacted the Edmund Hillary Foundation, the organization

16   that sponsored Pavlyukovskyy's fellowship in New Zealand, but it would not provide contact

17   information for Pavlyukovskyy. *Id.*, Ex. 8 (July 28, 2020 report from New Zealand firm). The

18   firm then conducted a search of publicly available records in New Zealand, but did not disclose

19   Pavlyukovskyy's whereabouts. The firm also sent Pavlyukovskyy numerous emails seeking to

20   deliver the documents, but received no response. *Id.*

21         Pavlyukovskyy argues that Piper failed to exercise reasonable diligence in attempting to

22   serve him personally. Although Piper asserts that it did not know Pavlyukovskyy was in New

23   Zealand until June 20, 2020, Pavlyukovskyy contends that it should have known sooner because

24   he broadcasted his New Zealand residence on social media in May 2020, before Piper filed this

25   suit. Defendant Pavlyukovskyy's Reply in Support of Motion to Dismiss ("Reply") [Dkt. No. 47]

26   3–4; Reply Declaration of Mark Pavlyukovskyy in Support of Motion to Dismiss ("Reply

27   Pavlyukovskyy Decl.") [Dkt. No.47-1] ¶¶ 8–9 (May 13, 2020 blog post entitled "I accidentally

28   ended up in New Zealand during corona. Here's what I learned" and May 24, 2020 Twitter post

6

by the Edmund Hillary Foundation about the blog post, which Pavlyukovskyy retweeted); *id.*, Ex. A (copy of May 24, 2020 retweet). In light of this, he asks that I discount Piper's service attempts in the United States.

A single blog post retweeted on Twitter does not negate Piper's other efforts at locating Pavlyukovskyy, which independently qualify as reasonable diligence. As discussed above, Piper hired three process servers, in California, Ohio and New Zealand, to try to search, locate, and personally serve Pavlyukovskyy. Piper exercised reasonable diligence and more than substantially complied with the statutory requirements for service.

"Considering that California's substitute service statute is to be 'liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant,' [Piper's] efforts to personally serve [Pavlyukovskyy] constitute reasonable diligence." *Commercial Judgment Recovery Fund 1 LLC v. A2Z Plating Co.*, No. SACV 11-0572 DOC, 2011 WL 2941029, at *3 (C.D. Cal. Jul. 15, 2011) (quoting *Ellard*, 94 Cal. App. 4th at 544); *see also Pasadena Medi-Ctr. Assocs. v. Superior Court*, 9 Cal. 3d 773, 778 (1973) ("The liberal construction rule, it is anticipated, will eliminate unnecessary, time-consuming, and costly disputes over legal technicalities, without prejudicing the right of defendants to proper notice of court proceedings.").

Given Piper's multiple attempts to serve Pavlyukovskyy personally and the overall liberal construction given to the California's substitute service statute, I conclude that Piper has shown reasonable diligence.

### B. Usual Place of Business

For Piper's substitute service on Pavlyukovskyy to be effective, it must show that (1) it left a copy of the summons and complaint at Pavlyukovskyy's "usual place of business" (2) with a person "apparently in charge of his or her office" (3) who was informed of its contents and that (4) it subsequently mailed a copy to the same address. Cal. Code Civ. P. § 415.20(b). Although the term "usual place of business" is not defined, commentary to the statute indicates that it includes a defendant's "customary place of employment" or his or her "own business enterprise." *See* Judicial Council Commentary to Cal. Code Civ. P. § 415.20(b).

In August 2020, after multiple attempts to locate and personally serve Pavlyukovskyy failed, Piper instructed its process server to effect substituted service on Pavlyukovskyy at the offices of his business, My Creativity Box., Inc., located at 953 De Haro Street, San Francisco, CA 94107. Debruine Decl. ¶ 12. The building at 953 De Haro Street is the Potrero Hill Neighborhood House ("PHN House"), which offers office space for rent. *Id.* Piper is familiar with the PHN House because it originally had its office there before moving to larger commercial spaces. Declaration of David Lundgren in Support of Piper, Inc.'s Opposition to Defendant's Motion to Dismiss ("Lundgren Decl.") [Dkt. No. 43] ¶ 3.

Piper cites to three cases to demonstrate why the PHN House address fits within the broad scope of the term "usual place of business". In *Coomes v. Shamji*, 260 Fed. Appx. 988, 989 (9th Cir. 2007), the Ninth Circuit affirmed the district court's decision that service had occurred at the defendant's usual place of business, despite the fact that the defendant lived abroad and only maintained sporadic contacts with the business located in New Jersey.

In *Commercial Judgment Recovery Fund*, 2011 WL 2941029, at *4, although defendant "was living out of the country when service occurred," substitute service was properly affected at defendant's "usual place of business", a hotel location in California, because defendant was the hotel's Chief Executive Officer at the time of service and maintained at least some activity in that location. The court concluded that this was "sufficient to establish that the hotel was defendant's "usual place of business," a conclusion it found "consistent with California's interpretation that the statute governing substitute service shall be 'liberally construed to effectuate service and uphold jurisdiction if actual notice had been received by the defendant[.]'" *Id.* (quoting *Ellard*, 94 Cal. App. 4th at 544).

In *Wright v. Ferry*, No. 17-CV-1996-BAS-NLS, 2018 WL 1898913, at *4 (S.D. Cal. Apr. 20, 2018), the court surveyed the case law to suggest that "a defendant will be deemed to have a 'usual place of business' at the corporate offices of a corporate entity where he is an officer or director, and conducts some business activities there." Defendant in that case lived outside of the United States when service was effected, but conceded that he was an "owner and officer" of the business located in California, where he supervised business-related activities. *Id.*

Similarly, Piper contends that Pavlyukovskyy is the founder and Chief Executive Officer of My Creativity Box, making the offices of My Creativity Box his "usual place of business." It asserts that My Creativity Box uses offices the PHN House, and lists that as its address to comply with California law and in filings with federal agencies. *See* DeBruine Decl., Ex. 2 (My Creativity Box's privacy policy lists 953 De Haro Street, San Francisco as its physical mail address for individual rights requests); *id.*, Ex. 3 (My Creativity Box's seller profile on Amazon.com lists 953 De Haro Street, San Francisco as its "business address"); *id.*, Ex. 4 (My Creativity Box lists 953 De Haro Street, San Francisco in two applications submitted to the U.S. Patent and Trademark Office); *id.*, Ex. 5 (import records for My Creativity Box on ImportGenius.com lists 953 De Haro Street, San Francisco as it address).

Moreover, on July 20, 2020, Piper called the PHN House and spoke with its manager, Jean Crosby, who confirmed that Mochi/My Creativity Box was still located in that building and that its employees were still active there, although "not there every day." Lundgren Decl. ¶ 3. She volunteered to forward any material left with her to Mihran Vardanyan, who is employed as Chief Scientist by My Creativity Box and also named as defendant in this suit. *Id.*

Pavlyukovskyy does not dispute that he is the founder and one of two employees, along with Vardanyan, of My Creativity Box. Reply Pavlyukovskyy Decl. ¶¶ 1, 5. Instead, he contends that none of the activities at the PHN House constitute business activities for it to be deemed his "usual place of business". In his reply declaration, he contrasts how Piper used the PHN House with how My Creativity Box has been using it. When Piper used it, he asserts that it paid rent, had the rights to use multiple rooms as office space, with desks and computers, and up to fifteen Piper employees would come in six to seven days a week. *Id.* ¶ 3. By contrast, he contends that My Creativity Box was not paying rent for space and instead was teaching STEM classes free of charge to children in the neighborhood who used the PNH House as an educational resource. *Id.* ¶ 4. My Creativity Box only had the "nonexclusive use of one large room" and "attic storage space." *Id.*

However, Pavlyukovskyy concedes that "[w]hen [he] was in the country [he] would occasionally use it for work," and that he "was there infrequently in 2019." *Id.* ¶ 6. These

sporadic contacts, along with the conceded fact that he is the founder and owner of the My Creativity Box, are sufficient. *Wright*, 2018 WL 1898913, at *4. Piper also offers multiple pieces of evidence that show My Creativity Box listed the PNH House as its business address. That Piper's past contacts with the PHN house were somehow greater than My Creativity Box's does not make it any less of a "usual place of business" for Pavlyukovskyy under the meaning California Code Civil Procedure section 415.20(b).

Substitute service on Pavlyukovskyy was proper under California law, and consequently under Rule 4(e).

## CONCLUSION

For the reasons stated above, Pavlyukovskyy's motion to dismiss for insufficient service of process is DENIED. Pavlyukovskyy shall have twenty (20) days from the date of this Order to respond to the Complaint.

**IT IS SO ORDERED.**

Dated: November 23, 2020

William H. Orrick
United States District Judge